## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

**WILLIAM MORGAN**
8 Old Orchard Road
Old Orchard Beach ME  04064,

    **Plaintiff,**

**v.**            Civil Action No. _____

**CMG MORTGAGE, INC. d/b/a**
**CMG FINANCIAL**       **DEMAND FOR JURY TRIAL**
3160 Crow Canyon Rd.
Suite 400
San Ramon, CA  94583

    **Defendant.**

## COMPLAINT

Plaintiff William Morgan ("Morgan" or "Plaintiff") brings this action against CMG Mortgage Inc. d/b/a CMG Financial ("CMG" or "Defendant") for its unfair, deceptive, and wrongful home loan servicing practices.  Plaintiff demands a trial by jury on all counts for which a right to trial by jury is allowed and, in support of his Complaint, states as follows:

### INTRODUCTION

1.  As is the case here with CMG's underlying acts and omissions, mortgage servicers place their interests and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers. CMG routinely unfairly and deceptively ignores its statutory and contractual duties, including those which were agreed to as part of its duty to act safely and soundly.   These conclusions are known to CMG and supported by the facts discussed *infra* and also in the public admissions of its authorized agent/vendor— Cenlar FSB ("Cenlar")— which include:

a.      The findings of the Office of the Comptroller of the Currency ("OCC") published on October 26, 2021 which found Cenlar failed to establish effective controls and risk management practices related to its business as a subservicing agent/vendor for CMG (and hundreds of other mortgage entities).  *See* Ex. 1, OCC-Cenlar Consent Order.

b.      The specific finding by the OCC that Cenlar failed, within its first line operations, to take timely corrective actions to respond to issues (just like those experienced by Morgan discussed *infra*), remediate known risks, and otherwise be accountable for its subservicing work even though it had been previously notified of such issues.

c.      The OCC's February 11, 2022, correspondence to Cenlar finding that Cenlar's mortgage servicing activities, including those subject to and related to those disclosed in this action, have created a "heightened risk, including significant operational risk" and warrant Cenlar to be subject to the OCC Guidelines Establishing Heightened Standards.  *See* Ex. 2, OCC-Cenlar Letter.

2.      CMG knew about or had reason to know and recklessly disregarded the unsafe and unsound business practices of Cenlar acting as its authorized subservicing agent/vendor in relation to Morgan and his loan subject to this action.  It failed to take corrective actions to control Cenlar and instead ratified Cenlar's wrongful conduct on its behalf.  This fact is supported not only by Morgan's experiences with CMG but the experiences of other borrowers such as Bryant Walker, a resident and consumer in the Commonwealth of Pennsylvania, who Cenlar acting on behalf of

CMG unfairly and deceptively sought to collect sums not due by making false and knowingly untrue statements.

3.      These practices are compounded when homeowners, like Morgan, try in good faith to resolve their situation and CMG disregards its duty to conduct a reasonable investigation of homeowners' notices of error, as mandated by the Real Estate Settlement Procedures Act of 1974 (RESPA). 12 U.S.C. §§ 2602, *et seq.*  In addition, as shown below, CMG has also failed its mandatory duties to *"*take timely action to respond to a borrowers' requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" and also to "comply with other obligations found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(C) & (E).

4.      RESPA was intended to be and is considered remedial legislation. *See e.g. Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) ("As a remedial statute, RESPA is construed broadly to effectuate its purposes"); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012) ("RESPA's provisions relating to loan servicing procedures should be 'construed liberally' to serve the statute's remedial purpose").  *See also* DODD–FRANK WALL STREET REFORM AND CONSUMER PROTECTION ACT, PL 111-203, July 21, 2010, 124 Stat 1376. Dodd-Frank was specifically enacted to "improv[e] accountability and transparency in the financial system…[and] to protect consumers from abusive financial services practices." *Id.*

5.      Yet, as a matter of apparent standard policy and practice, CMG disregards RESPA's express requirements set forth in 12 U.S.C. § 2605(k)(1)(C) & (E) to investigate errors, comply with the regulations established by the CFPB, and to avoid pursuing foreclosures and threats of foreclosure which are unjustified.  CMG's reckless disregard for its legal duties is further

demonstrated by its delegation to Cenlar to perform certain functions without supervising Cenlar to perform them adequately on its behalf.

6.      Morgan has sent two request for information letters (RFI) and twelve notice of error letters (NOE) between March 24, 2021 and November 4, 2021, to CMG by first class mail, certified mail return receipt requested, and CMG received each RFI or NOE at the address it publishes for such correspondence on each monthly mortgage statement it has sent to Morgan.

7.      CMG acknowledged in writing receipt of Morgan's RFI/NOEs on multiple dates. Yet, it responded on the merits to only one of the two RFI letters and four of the twelve NOE letters and therefore performed unreasonable investigations into the NOE letters to which it did not respond and that it was required to perform pursuant to RESPA and Regulation X. It is plain legal error for CMG to disregard its duties under RESPA, i.e. 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35.

8.      CMG further compounded issues by falsely defaming Morgan and putting him into a false, negative light with others as result of defamatory statements to the credit reporting agencies.

9.      As a direct and proximate result of CMG's violations of 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35, Plaintiff has been proximately harmed by CMG's failure to correct its own errors, its threatened foreclosure, and negative credit reporting it was not permitted to make under Federal law and the terms governing Morgan's loan incorporating Federal law. CMG's botched, unsafe, and unsound servicing of his loan was based upon its own repeated mistakes and failure to conduct any reasonable investigation. These damages put the Plaintiff in a negative, false light with the public and community through the false reports to the credit reporting agencies and his other creditors/potential creditors and has caused economic and non-economic emotional damages

with physical manifestations, including anxiety, concentration loss, frustration, shakes, loss of train of thought midsentence, dizziness, and fear caused by CMG's ongoing and consistent conduct, and also damage to his credit reputation and standing. In addition, Morgan's damages include statutory damages available pursuant to 12 U.S.C. § 2605(f).

### JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since certain of the claims asserted herein arise under the laws of the United States.  The Court also has diversity and supplemental jurisdiction over the state law claims raised pursuant to 28 U.S.C. § 1367.

11.      The Court has declaratory judgment authority pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57.

12.      Venue is proper in this Court as the acts and conduct alleged all occurred in Maine and Morgan is a resident of the State of Maine.

13.      This Court has Article III jurisdiction over the claims asserted herein (and detailed *infra*) since (i) Plaintiff has suffered injuries which are "concrete, particularized, and actual or imminent" (i.e., reputational harms by the disclosure of disputed, private, information to others which puts Plaintiff in a false, negative, light and is a traditional harm associated with the tort of defamation). Plaintiff's particularized injuries also involve the misleading imposition and attempted collection of charges not actually owed but which were actually demanded and/or collected by CMG (and its authorized agent Cenlar); (ii) the injuries were caused by CMG in delegation of its legal duties discussed herein to Cenlar whose acts and omissions impermissibly infected Plaintiff's contractual rights with  CMG; and (iii) the injuries would likely need to be redressed by judicial relief sought in this pleading since they have continued even after CMG has received notice of the issues presented in this matter.

14.     This Court has jurisdiction because the Plaintiff resides in Maine and the transactions and occurrences described herein occurred in Maine.

<strong>PARTIES</strong>

15.     Plaintiff William Morgan ("Morgan" or "Plaintiff") is a natural person who owns and resides at 8 Old Orchard Road, Old Orchard Beach ME  04064 ("Morgan Property") with his wife and infant daughter.  Morgan has resided at the Morgan Property at all times relevant and material to this action.  In addition:

a.     Morgan is a borrower on a note he signed on or about August 26, 2019, in favor of Norwich Commercial Group, Inc., ("Norwich"), Inc. a/k/a Norcom Mortgage (the "Loan") which was used for personal purposes to acquire the Morgan Property for he and his family and which Loan is insured by the Federal Housing Administration of the United States Department Housing and Community Development ("FHA").

b.     To provide security interest in the Loan, Morgan also signed on or about August 26, 2019, and agreed to a Mortgage which incorporated as a material term all Federal, State, and Local laws and regulations and administrative rules and orders between him and Norwich and its successors in interest.

c.     Morgan is a borrower subject to the protections of RESPA and Regulation X.  Morgan is also an obligor entitled to the protections of 14 M.R.S.A § 6113.

16.     Defendant CMG is regulated by Maine's Department of Professional and Financial Credit Regulation (License No.  SLM4893).  CMG qualifies as a mortgage servicer pursuant to 12 C.F.R. § 1024.2 since it holds and is responsible for the servicing of the Morgan Loan, which is federally related (as that term is defined by 12 U.S.C. § 2602(1)) and is insured by the FHA.  CMG

is also a mortgage servicer subject to 14 M.R.S.A § 6113 in relation to Morgan and the Morgan Loan.

17.    Not named as a party to this action, Cenlar, FSB is a chartered federal savings bank which operates a niche business as a specialized vendor for hundreds of clients nationwide, including CMG, in relation to certain mortgage servicing functions including functioning as their primary servicer of residential mortgage loans. Cenlar is a citizen of New Jersey. In addition:

a.    In relation to Morgan, Cenlar has no lawful or contractual relationships since it only works in the 'back of the house' (i.e. off the books) on behalf of CMG and no notice of the actual transfer of servicing rights pursuant to 12 U.S.C. § 2605(b)(c) has occurred;

b.    Cenlar is simply a vendor engaged by and controlled by CMG pursuant to its contracts with Cenlar on a "Private Label" basis in relation to —Morgan; meaning generally, that Cenlar was to use CMG's name in all communications with Morgan when servicing the Morgan Loan;

c.    Upon information and belief based upon the statement of Cenlar's Vice President, Executive Client Management on June 7, 2021, Cenlar uses a sub-vendor, i.e. Regulus, to provide to it (and its "Private Label" clients including CMG) outsourced billing and payment services. As discussed *herein*, Cenlar is aware that Regulus does not promptly credit payments received by it while acting under Cenlar's control and as its authorized sub-agent/vendor with CMG. In relation to the Plaintiff, Cenlar is not a furnisher of credit information to the credit reporting agencies as defined by 12 U.S.C. § 2605(e)(3) and  12 C.F.R. § 1024.35(i)(1) and the only trade lines associated with the Plaintiff are those reported by CMG under its name in relation to the Loan.

### FACTUAL ALLEGATIONS

#### *General Allegations Regarding CMG's Legal Knowledge and*

#### *Reckless Disregard Thereof*

18.    All persons, including licensed mortgage lender/servicers conducting regular business in the State of Maine, like CMG, are expected to know the law.  As shown herein CMG has not followed the laws governing its activities.

19.    Pursuant to 12 U.S.C. § 2605(k)(1)(C) & (E), CMG has a duty to  home loan borrowers like Morgan to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the CFPB, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C. § 2605.  As shown herein CMG did not take reasonable or appropriate steps to comply with its standard servicer duties.

20.    Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), CMG is required to "[p]rovide accurate and timely disclosures to a borrower as required by 12 C.F.R. § 1024.38 or other applicable law." Pursuant to 12 C.F.R. § 1024.35(b)(5), CMG is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for CMG to demand payments, sums, fees or charges from borrowers that it is prohibited from imposing in the first instance by contract and by law. As shown herein CMG has a routine of sending inaccurate disclosures.

21.    CMG's knowledge is also represented by the standard and uniform Mortgage securing its interest in the Morgan Property.  Such standard mortgages incorporate as material terms of their agreements RESPA and its implementing regulations and other applicable laws including state laws as well as the FHA guidelines governing the Morgan Loan.  CMG has

repeatedly ignored the FHA guidelines governing the Morgan Loan and incorporated into the Mortgage Loan and its documents.

22.    As a matter of state law, CMG "shall act in good faith toward [Morgan] in the servicing of an obligation secured by a mortgage and in any foreclosure action relating to such an obligation." 14 M.R.S. § 6113(2).  As shown herein CMG has not acted in good faith in relation to the Morgan Loan and Morgan.

23.    As a matter of state law, CMG and its servicing agent(s), including Cenlar, are required to maintain appropriate staffing for borrowers like Morgan "to communicate with [CMG] or [Cenlar] concerning the consumer credit transaction" orally. 9-A M.R.S. § 9-304(2) and 9-A M.R.S., § 9-311-A.  As shown herein CMG has not adequately staffed its servicing practices and instead has deceptively relied upon Cenlar who's practices are unsafe and unsound according to the OCC.

### *Factual Allegations Relevant to Plaintiff*

24.    Like many other homeowners nationwide, Morgan's household income reduced as a result of the COVID-19 pandemic.  Before the pandemic, Morgan had been current on the Morgan Loan.

25.     As one step to help Morgan and other homeowners in his situation Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Public Law No: 116-136 which gave him certain protections.  In response to the CARES Act and Congress' stated public policies related to mortgage borrowers, the FHA offered certain relief to Morgan (and others), which also became incorporated into the Morgan Loan.

26.    As was his right, Morgan requested a CARES Act forbearance pursuant to the FHA guidelines effective April 1, 2020, where he was not required to make payments for three months

and CMG was barred from negatively reporting the status of the Morgan Loan. CMG confirmed Morgan's forbearance in correspondence dated April 4, 2020.

27.    Morgan was granted an automatic extension of that forbearance that lasted through November 2020 in correspondence from CMG to Morgan dated June 25, 2020, July 28, 2020, and September 29, 2020, in which CMG also promised that the credit reporting on the Morgan Loan would "remain in a current status for credit reporting throughout the forbearance period." However, as shown *infra*, CMG did not honor that agreement and sought sums from Morgan it was not permitted to seek and also willfully and recklessly reported false, negative information about Morgan to others that impacted his credit and put him in a false light.

28.    Even though he was in a forbearance plan and was not required to make payments to CMG, Morgan did make payments to CMG as he was able during the forbearance period.   At no point in time did CMG not know how to reach Morgan to discuss the Morgan Loan or to notify him of any problems or make any inquiries.

29.    During his forbearance period, CMG wrote to Morgan, with the intent that he rely upon its statements, and made certain knowingly false and deceptive claims.  This correspondence confused Morgan and created anxiety, worry, frustration, and fright for him and his family.  This correspondence included:

    a.    On April 17, 2020 CMG sent Morgan a statement claiming he was overdue on his loan payments and did not acknowledge that the Morgan Loan was in an approved forbearance plan.

    b.    On July 13, 2020, CMG wrote to Morgan and claimed his loss mitigation application was complete (he had not applied) and also implied it considered him at risk of

foreclosure even though he was in an approved forbearance plan and CMG could not pursue foreclosure for that reason and in light of the CARES Act and the FHA guidelines.

        c.     On July 22, 2020, CMG wrote to Morgan and claimed he had been approved for a loss mitigation modification he had not even applied to receive.  CMG also implied that it considered him at risk of foreclosure if he did not accept the offer even though he was in an approved forbearance plan and CMG could not pursue foreclosure for that reason and in light of the CARES Act and the FHA guidelines.

        d.     On August 17, 2020 CMG sent a statement to Morgan claiming Morgan was overdue on his loan payments and did not acknowledge that the Morgan Loan was in an approved forbearance plan.

        e.     On October 8, 2020 CMG wrote to Morgan and claimed he missed payments even though he was in an approved forbearance plan.  Again, CMG also implied that it considered him at risk of foreclosure if he did not accept the offer even though he was in an approved forbearance plan and CMG could not pursue foreclosure for that reason and in light of the CARES Act and the FHA guidelines.

        30.     In November 2020, Morgan contacted CMG and requested to be considered for appropriate FHA loss mitigation options to reinstate his loan and end the forbearance period effective December 1, 2020.  At that time, the FHA required CMG to offer a loan modification to Morgan pursuant to its guidelines which would permit him to add the payments missed during the forbearance period as a non-interest balloon payment at the end of the Morgan Loan term or when the loan was paid off.

        31.     On or about December 9, 2020, CMG sent to Morgan a false and deceptive FHA COVID-19 Partial Claim loss mitigation modification which did not correctly calculate the amount

of unpaid payments on the Morgan Loan during the forbearance period. Morgan and his housing counselor, Nicole DiGeronimo, contacted CMG by telephone to attempt to have it correct its errors on numerous instances including between December 28, 2020 and February 17, 2021 but CMG refused to correct the errors.

32.     The efforts of the housing counselor for Morgan to communicate with CMG by telephone were totally thwarted by telephone systems maintained by CMG (or Cenlar as its agent) and by inadequate staffing levels, such that it was impossible for the housing counselor to have effective telephonic communication with CMG (and its agent, Cenlar).

33.     Even though it knew it was required to offer Morgan a FHA COVID-19 Partial Claim loss mitigation modification in compliance with the FHA guidelines, CMG attempted instead to wrongly coerce him into an agreement that would put him at risk of foreclosure since it would not account for all the payments missed during his qualified forbearance period. CMG's business practice is to churn fees and costs related to default and foreclosure activities because those sums are profit centers for it and its vendor Cenlar. In other words, CMG and Cenlar make less money servicing the Morgan Loan if they properly follow the FHA guidelines.

34.     From December 9, 2020 to April 2, 2021, CMG abandoned any effort to provide Morgan a proper FHA COVID-19 Partial Claim loss mitigation modification it was required to offer him and insisted instead to coerce him to committing mortgage fraud by agreeing to its December 9, 2020 offer which was knowingly false and deceptive.

35.     In correspondence dated March 2, 2021, CMG wrote to Morgan and falsely claimed he had declined its offer to modify his payments with it and as a result he was not eligible for "any loan modification or other foreclosure alternative."

36.     On or about March 23, 2021, Morgan engaged counsel to help him resolve the ongoing issues with CMG in reliance to it false statements, threats of foreclosure, and otherwise unsound and unsafe mortgage servicing.  CMG knew as of March 24, 2021that Morgan had engaged counsel for this purpose and had received written authorization from Morgan to communicate with counsel and not to communicate with him any further about the issues.

37.     Through counsel, Morgan sent to CMG on March 25, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X, a Request for Information and requested particular information related to the Mortgage, CMG, and the Morgan Loan.  CMG received this Request for Information letter but never provided the requested materials.  It also never made any inquiries to Morgan or his counsel to try to understand any confusion about the information sought.

38.     Through counsel, Morgan also sent to CMG on March 25, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X, a Notice of Error letter identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan:

a.      CMG failed to properly process his FHA COVID-19 Partial Claim loss mitigation application as required by the FHA guidelines incorporated into the Morgan Loan documents because the offer made by CMG was improperly back-dated and did not include all of the monthly payments that came due during the period of forbearance.

b.      CMG required Morgan to complete a 19-page application that was not required by the FHA guidelines for him to complete to obtain an FHA COVID-19 Partial Claim loss mitigation modification of the Morgan Loan.

     c.     CMG falsely claimed that Morgan had declined his CMG's loss mitigation option which did not even comply with the guidelines governing the Morgan Loan.

39.     CMG received the Notice of error described in the previous paragraph.

40.     In correspondence to Morgan's counsel dated April 6, 2021, CMG admitted that its own coding error went unnoticed and Morgan's request for a FHA COVID-19 Partial Claim loss mitigation modification went to the wrong department and "was not reviewed" for more than four months.  This admission demonstrates that CMG does not have sufficient quality control measures in place and only when a borrower like Morgan hires an attorney will it investigate a dispute caused entirely by it.  This correspondence also admitted that its representatives were not properly trained and supervised and caused Morgan great distress since he now understood that CMG lacked the resources and ability to fairly and honestly service his mortgage.

41.     CMG's investigation into Morgan's March 25, 2021 Notice of Error was unreasonable.  While it admitted to certain errors, it did not address at all the false and deceptive threat by CMG on March 2, 2021 in writing in which CMG claimed Morgan had declined a modification when he had not done so.  In addition, the investigation was unreasonable for additional reasons including:

     a.     The response identified the wrong monthly payment for the Morgan Loan which would have resulted in a deficit and led to future problems if not corrected and also which included fees and charges charged and imposed by CMG for its own errors.

     b.     The response still identified the wrong partial claim amount and failed to give credit for all of the payments made by Morgan (in other words CMG wanted to apparently pocket monies under the table it was not entitled to and not give Morgan credit for those payments).

c.    It offered a boilerplate and improper response to Morgan's request for information dated March 25, 2021, failing to provide the response that he was entitled to receive under RESPA and Regulation X and improperly claiming it was too burdensome to do so.  This was false and deceptive since it had delegated to Cenlar the duty to respond to the request for admission and it paid Cenlar to perform this service from the sums paid by Morgan and other borrowers to it.  Delegation of a statutory duty is not a proper basis to deny the requested information.

42.    In response to Morgan's March 25, 2021, Notice of Error that CMG received and as part of its consistent apparent policy, practice and pattern, CMG did not suppress the negative credit reporting information that was in dispute as was required. 12 U.S.C. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  For example, sometime prior to April 17, 2021, CMG began reporting false, derogatory and negative information (i.e. that Morgan was 120 days past due and owed over $18,000 in arrears) to the credit reporting agency known as TransUnion regarding Morgan and the Morgan Loan which it was prohibited from reporting.

43.    Through counsel, Morgan also sent to CMG's President and CEO on April 12, 2021 a notice pursuant to the Maine Unfair Trade Practices Act, 5 M.R.S. §§ 205-A – 214.  In this correspondence Morgan disputed CMG's practices to require Morgan to sign multiple original promissory notes which were negotiable instruments, and also a "Corrections Agreement" which are in fact not required by the FHA guidelines governing the Mortgage Loan and would have granted CMG and its successors the right to unilaterally declare an error later and change the terms of the Morgan Loan and force Morgan to pay CMG's legal fees if he challenges the change.

44.    CMG's conditions discussed in the previous paragraph were not made for a legitimate purpose and were intended to coerce Morgan to agree to CMG's plan to permit it to churn fees and charges it is not permitted to impose.

45.    Through counsel, Morgan also sent to CMG on April 14, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan:

a.    CMG's offer of an FHA COVID-19 Partial Claim loss mitigation modification dated April 2, 2021 had the wrong calculations since it was improperly holding monies in suspense and not including those sums in its calculations.

b.    CMG calculated the wrong monthly payment commencing June 1, 2021.

46.    CMG received the Notice of error described in the previous paragraph.

47.    Through counsel, Morgan also sent to CMG on April 15, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan and correspondence dated April 7, 2021, from CMG's vendor First American Mortgage Solutions:

a.    CMG's offer of an FHA COVID-19 Partial Claim loss mitigation modification dated April 2, 202, was prepared by Cenlar and had the wrong calculations since it was improperly holding monies in suspense and not including those sums in its calculations.

b.    CMG made a basic arithmetic error in calculating the sums in the modification.

      c.         CMG was improperly requesting Morgan to become personally obligated on multiple original notes.

      d.         CMG was demanding a broad Compliance Agreement to permit it to unilaterally change the terms of the modification which was unnecessary and not authorized under Maine law.

48.    CMG received the Notice of Error described in the previous paragraph.

49.    Through counsel, Morgan also sent to CMG on April 19, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan:

      a.         CMG failed to continue Morgan's forbearance of payments until it provided him a proper FHA COVID-19 Partial Claim loss mitigation modification that did not include sums CMG was not authorized to demand and were not owed.

      b.         CMG was negatively and inaccurately reporting the status of the Morgan Loan to the credit porting agencies in violation of its prior promises and the CARES Act.

50.    CMG received the Notice of error described in the previous paragraph.

51.    Through counsel, Morgan also sent to CMG on April 23, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan in response to the errors made by it in its letter dated April 22. 2021 including:

      a.         CMG's failure to account for the correct payment due on the Morgan Loan;

      b.         CMG's failure to calculate the correct partial claim amount;

c.      CMG's boilerplate objections and complete non-response to Morgan's March 25, 2021 request for information related to the Morgan Loan.

52.      CMG received the Notice of Error described in the previous paragraph but did not timely respond.

53.      Through counsel, Morgan also sent to CMG on May 6, 2021 at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan in response to the errors made by it in its letter dated April 28. 2021 including:

a.      CMG repeated its errors made in its April 7, 2021, correspondence without correction even though it knew its proposed FHA COVID-19 Partial Claim loss mitigation was false and inaccurate;

b.      CMG falsely claimed a right to collect interest on the modification's partial claim at the rate of 3.635% it was not entitled to demand under the FHA loss mitigation guidelines governing the Morgan Loan;

c.      CMG improperly  sought two original copies of a negotiable note which would have obligated Morgan on two negotiable notes for the same sums;

d.      CMG sought for Morgan to sign a broad Errors and Omissions Compliance Agreement which was unnecessary and would have permited CMG to unilaterally change the terms of the modification without Morgan's further consent or agreement in violation of the FHA guidelines and Maine law.

54.      CMG received the Notice of Error described in the previous paragraph.

55.     On April 30, 2021 CMG's agent—Cenlar—through John Grochala falsely claimed in an email message sent to counsel for Morgan that CMG could not process a FHA COVID-19 Partial Claim loss mitigation application until the end of a forbearance period.  The FHA guidelines had no such condition.  Further, it was unfair for CMG to simply proceed in such a manner, as it had before, since it continuously makes errors and seems unable to even calculate sums to be included correctly.  CMG's procedures, as implemented by its authorized agent, Cenlar seem to be solely intended to coerce borrowers like Morgan to accept "take it or leave it" errors and churn more fees, costs, and miscalculations to CMG's benefit not allowed under FHA guidelines.

56.     Through counsel, Morgan also sent to CMG on May 18, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan in response to the errors made by it in its correspondence related to FHA COVID-19 Partial Claim letter dated May 11, 2021, including:

a.     CMG falsely claimed a right to collect interest on the modification's partial claim at the rate of 3.635% it was not entitled to demand under the FHA loss mitigation guidelines governing the Morgan Loan.

b.     CMG improperly sought two original copies of a negotiable note which would have obligated Morgan on two negotiable notes for the same sums.

c.     CMG sought for Morgan to sign a broad Errors and Omissions Compliance Agreement which was unnecessary and would permit CMG to unilaterally change the terms of the modification without Morgan's further consent or agreement which is in violation of the FHA guidelines and Maine law.

57.     CMG received the Notice of Error described in the previous paragraph but did not timely respond.

58.     On May 20, 2021, CMG received from Morgan his completed FHA COVID-19 Partial Claim modification with the correct sums and amounts accounted for.  Yet, it did not update its systems to correctly reflect the agreement.

59.     On June 1, 2021, CMG received from Morgan the first monthly mortgage payment due on his post-forbearance loan modification on the date due in the amount of $2,598.73.   CMG did not give Morgan prompt credit for the payment.  This is shown by CMG's inaccurate statement dated June 10, 2021, which did not identify the June 1, 2021 payment received by CMG more than a week before.

60.     CMG's June 10, 2021 statement to Morgan also unfairly and deceptively claimed Morgan owed $5,197.46 and claimed he was overdue.   In addition, CMG's June 10, 2021, statement to Morgan also deceptively stated CMG applied his $2,598.73 payment received on June 1, 2021, as a "Partial/Unapplied Payment."

61.     Through counsel, Morgan also sent to CMG on June 30, 2021 at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan in response to the errors made by it in its correspondence related to its application of the June 1, 2021 payment and claims related to what payment was due on July 1, 2021 including:

        a.     CMG falsely claimed Morgan owed an overdue payment on the Morgan Loan.

  b.  CMG failed to give prompt credit for the payment it received on June 1, 2021.

  c.  CMG sought to collect the wrong sum for the July 1, 2021, payment.

  d.  CMG's online portal claimed materially different sums than the June 10, 2021, statement.

62.  CMG received the Notice of Error described in the previous paragraph but did not perform a reasonable investigation. This conclusion is based upon the following:

  a.  CMG asserted factual errors in its response dated July 8, 2021 about date payments and the modification documents were received.

  b.  CMG claimed it could not control how the mail was delivered by the USPS but in fact it could do so because it chose to pay for a cheaper mailing service through its vendor NCP which did not guarantee mail was mailed timely when it was dated. In other words, a reasonable investigation would have revealed the delay was caused by its contract with NCP which knowingly did not send CMG communications to Morgan timely.

  c.  CMG claimed the wrong sums for mortgage insurance premium.

63.  Through counsel, Morgan also sent to CMG on July 3, 2021 at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan in response to its inaccurate Annual Escrow Disclosure Statement dated June 21, 2021 but not received until July 3, 2021 including:

  a.  CMG either falsely backdated the correspondence or did not pay its mail vendor for same-day, first class mail service which would have ensured that it was received timely as intended by Congress.

b.    CMG's annual escrow statement was inaccurate and did not calculate the correct payment due from Morgan.

64.    CMG received the Notice of Error described in the previous paragraph but did not timely respond.

65.    Through counsel, Morgan also sent to CMG on July 6, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Request for Information to CMG requesting certain information and documents related to the Morgan Loan and the payments related to the Morgan Loan in response to CMG's inaccurate, backdated June 21, 2021 Annual Escrow Statement including:

a.    CMG's calculation of the monthly mortgage insurance premiums as part of the payments received and due from Morgan on the Morgan Loan.

b.    CMG's application of the monthly mortgage insurance premiums and refunds related to the same report by CMG on its statements and disclosures to Morgan.

c.    The data used by CMG to calculate the escrow analysis for the June 21, 2021 statement and any analysis thereafter and reasons for a new analysis.

d.    Request for an accounting of the Morgan Loan.

66.    CMG received the Request for Information described in the previous paragraph but did not respond.

67.    Through counsel, Morgan also sent to CMG on July 20, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments related to the Morgan Loan in response to its inaccurate correspondence dated July 7, 2021, but not received until July 20, 2021, including:

      a.     CMG asserted factual errors in its response dated July 8, 2021, about date payments and the modification documents were received.

      b.     CMG claimed it could not control how fast the mail was delivered by the USPS but in fact it could do so because it chose to pay for a cheaper service through its vendor NCP which did not guarantee mail was mailed timely when it was dated.  In other words, a reasonable investigation would have revealed the delay was caused by its contract with NCP which knowingly did not send it timely.

      c.     CMG claimed the wrong sums for mortgage insurance premium.

68.    CMG received the Notice of Error described in the previous paragraph but did not timely respond.

69.    Through counsel, Morgan also sent to CMG on November 4, 2021, at the address it published for such correspondence pursuant to RESPA and Regulation X a Notice of Error identifying the following mistakes by CMG in servicing the Morgan Loan in relation to payments including:

      a.     CMG's failure to substantively respond to Morgan's July 6, 2021, Request for Information.

      b.     CMG's failure to conduct a reasonable investigation of Morgan's July 20, 2021, Notice of Error or even responding to it.

70.    CMG received the Notice of Error described in the previous paragraph but did not timely respond.

71.    Morgan has been harmed as a result of CMG's acts and omissions described herein and that harm includes economic and non-economic damages in the form of emotional distress damages manifested by anger, frustration, fear, mental distress, anxiety, and worry. Morgan is also

entitled to certain statutory damages under the claims asserted herein in light of CMG's pattern and practice of violating RESPA and Regulation X and violation of its statutory duty of good faith and fair dealing as shown herein.

72.    Throughout the period from when Morgan began to be represented by counsel in March of 2021 through the sending of that counsel's twelth Notice of Error Letter in November 2021, all efforts by Morgan's counsel to communicate with CMG by telephone regarding the issues with the Morgan Loan were utterly frustrated and stymied in that:

a.    Every call to CMG resulted in the caller having to wait for unreasonable and extrodinary lengths of time before a live CMG witness answered the call;

b.    While Morgan's counsel was waiting for a CMG employee to answer the call, the calls were frequently dropped;

c.    Once a CMG employee (actually Cenlar employee) did answer the telephone that employee was unable to access the servicers' records for the Morgan Loan or to provide relevant information regarding the Morgan Loan;

d.    In almost every call, it became necessary for the initial CMG (or Cenlar) employee who answered the call to transfer the call to some more knowledgeable employee or employee with greater authority and such call transfers frequently resulting further inordinate and unreasonable hold times and wait times and often the calls were dropped, forcing Morgan's counsel to begin the lengthy call process all over again.

73.    The inability of CMG and its agent, Cenler, timely and responsibly respond to telephone calls from borrowers, from housing counselors for borrowers and from attorney's for borrowers left borrowers and their agents unable to obtain necessary loan information and unable

to resolve errors being made by CMG, and its agent Cenlar, and burdened borrowers like Morgan with substantial added legal expense.

74.    CMG's conduct shows such malicious or reckless disregard for the rights of Morgan.

75.    CMG's reckless indifference and intent is further demonstrated by its failure to follow its statutory duties under RESPA, 12 U.S.C. § 2605, to avoid foreclosure and promptly respond to the Morgan's inquiries, disputes, and notices of error.  CMG's efforts, therefore, are not only intended to harm Morgan but also the taxpayers and others utilizing the FHA loan program.  This conduct arises from and relates to and is symptomatic of Cenlar's unsafe and unsound pattern and practice of violating the lending and mortgage laws on behalf of CMG as found by the OCC.

76.    Plaintiff's damages are also based upon CMG's violations of its legal duties to them.  Pursuant to the terms of the Parties' contractual agreements with the Morgan Loan, CMG agreed to act in accordance with all applicable laws, including RESPA and Maine law.  None of the applicable laws permit CMG to act unfairly, deceptively, or wrongfully based on its own purported mistakes because it decides after the fact it wants to change the terms of the Morgan Loan agreed upon and was accepted by Morgan.

### Count I:  VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 U.S.C. § 2605, 12 C.F.R. § 1024.41

77.    The Plaintiff adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

78.    Morgan is a "borrower" entitled to the protections codified at 12 U.S.C. § 2605 and Regulation X.

79.     CMG is a mortgage servicer subject to the mandatory requirements of 12 U.S.C. § 2605 and Regulation X in relation to Morgan and is responsible for the acts and omissions of its vendor Cenlar.

80.     Pursuant to 12 U.S.C. § 2605(k)(1)(E), CMG had a legal duty to timely "to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

81.     CMG had duty of care under 12 U.S.C. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35 to acknowledge in writing Plaintiff's QWR/NOEs within five business days and to respond to the QWR/NOE after conducting a reasonable investigation in writing within thirty business days (unless it seeks an extension of not more than 15 days).

82.     CMG did not materially respond or investigate numerous of the Plaintiffs' QWR/NOEs identified in the preceding paragraphs and therefore violated 12 U.S.C. §§ 2605(e), 2605(k)(1)(C), 2605(k)(1)(E).

83.     CMG also had duty of care under 12 C.F.R. § 1024.36 and 12 C.F.R. § 1024.35 to conduct a reasonable investigation of Plaintiffs' QWR/NOEs but failed to do so since it failed to do any reasonable investigation as demonstrated *supra*.

84.     CMG also violated 12 U.S.C. § 2605(k)(1)(C) by failing to take timely action to avoid the <u>threatened</u> foreclosure of Morgan and the Morgan Property by honoring the Morgan Loan and the terms governing it under the FHA loss mitigation guidelines.  In other words, if CMG honored its written agreement and promises and conditions of the Morgan Loan no <u>threatened</u> foreclosure would have occured.  Thus, CMG's conduct discussed *supra* and through the filing of this pleading violates 12 U.S.C. § 2605(k)(1)(C).

85.     As a direct and proximate result of these violations Plaintiffs are entitled to their actual and statutory damages pursuant to 12 U.S.C. § 2605(f) described *supra* for CMG's failure to reasonably investigate their QWR/NOEs and correct its errors and mistakes as described herein consistent with its other mandatory duties under RESPA and Regulation X.

### Count II: <u>VIOLATION OF 14 M.R.S. § 6113</u>

### (<u>CLAIM FOR STATUTORY AND ACTUAL DAMAGES</u>)

86.     Morgan adopts by reference the factual allegations contained in the preceding paragraphs of this complaint with the same effect as if herein fully set forth.

87.     The Note is a negotiable instrument within the meaning of 11 M.R.S.§ 3-1104 and the Loan is an obligation within the meaning of 14 M.R.S. § 6113(1)(C).

88.     CMG is a mortgage servicer licensed by the Maine Bureau of Consumer Credit Protection to operate as a mortgage servicer in the State of Maine.

89.     CMG is a mortgage servicer engaged servicing of the Loan within the meaning of 14 M.R.S. § 6113

90.     CMG has been the servicer for the Morgan Loan engaged in servicing of the Morgan Loan at all times relevant and material to the claims in this action.

91.     For all relevant times CMG has violated its duty of good faith dealing with Morgan by engaging in the activities outlined *supra*, including but not limited to:

      a.     Failing to timely and promptly respond to Morgan's efforts to modify the Morgan Loan pursuant to the guidelines governing the Morgan Loan;

      b.     Sending inaccurate disclosures and statements to Morgan with the intent that he rely upon them;

c.      Failing to give prompt credit for payments made by Morgan on the Morgan Loan;

d.      Threatening to pursue foreclosure when it had no right to make such a claim or threat;

e.      Ignoring and not responding to Morgan's notices of error and requests for information and in some instances advancing boilerplate objections;

f.      Failing to properly and reasonably respond to telephone calls from Morgan, his housing counselor and his attorney; and

g.      Miscalculating escrow sums collected by CMG from Morgan related to the Morgan Loan.

92.    The repeated and flagrant violations of its duty of good faith constitute a pattern and practice related to the Loan permits the Court to impose statutory damages not to exceed $15,000.

93.    Morgan has suffered actual economic and non-economic damages, as more fully described *supra,* as a result of CMG's violations of its duty of good faith.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court and fact finder grant the following relief:

1.    Pursuant to Count I, award Plaintiff statutory damages of $2,000 for CMG's noncompliance with RESPA's borrower dispute resolution and other provisions described herein, 12 U.S.C. § 2605(f).

2.    Pursuant to Count I, award Plaintiff actual damages for CMG's violations of RESPA, 12 U.S.C. §§ 2605(e), 2605(k)(1)(C), 2605(k)(1)(E), and 12 C.F.R. § 1024.35(i)(1)

pursuant to 12 U.S.C. § 2605(f)(2)(A) in the amount of $250.000.00.

3.      Pursuant to Count I, award Plaintiff actual damages for CMG's violations of RESPA, 12 U.S.C. § 2605(k)(1)(C) pursuant to 12 U.S.C. § 2605(f)(2)(A). in the amount of $500,000.00.

4.      Pursuant to Count II, award Plaintiff actual damages in the amount of $250,000.00.

5.      Pursuant to Count II award Plaintiff statutory damages in the amount of $15,000.

6.      Award Plaintiff's attorney's fees, litigation expenses, and costs of suit under RESPA pursuant to 12 U.S.C. § 2605(f)(3) and 14 M.R.S. §6113(4)(C)(2)

7.      Grant such other or further relief as the Court deems proper.


Dated: July 26, 2022                                    _/s/ John Z. Steed_____
                                                        John Z. Steed, Esq. Bar # 5399
                                                        Law Office of Ellen S. Best
                                                        P.O. Box 386
                                                        Blue Hill, Maine 04614
                                                        (207) 374-2573
                                                        jsteed@ellenbestlaw.com
                                                        Attorney for Plaintiff